**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| PersonalWeb Technologies LLC, ) | |
| ) | Civil Action No. 6:11-cv-660 (LED) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | JURY TRIAL REQUESTED |
| EMC Corporation and VMware, Inc., ) | |
| ) | ORAL ARGUMENT REQUESTED |
| Defendants. ) | |
| ) | |
| ) | |

**DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT
OF CALIFORNIA OR, IN THE ALTERNATIVE,
TO THE CENTRAL DISTRICT OF CALIFORNIA**

I.   INTRODUCTION ............................................................................................................1

II.  FACTUAL BACKGROUND..........................................................................................4
     A.   PersonalWeb's Ties to California .........................................................................4
     B.   The Patents' and Inventors' Ties to California .....................................................5
     C.   VMware's and EMC's Ties to California .............................................................6
     D.   The Bulk of Relevant Documents Are in California ............................................7
     E.   The Bulk of Relevant Witnesses Are in California ..............................................8

III. Either California District Is A More Convenient Forum .................................................9
     A.   Legal Standard ......................................................................................................9
     B.   Brilliant's and PersonalWeb's Strategic Efforts To Create Ties To This District
          Should Not Be Accorded Any Weight.................................................................10
     C.   The Private Interest Factors Favor Transfer to California ..................................10
          1.   The Relevant Evidence Is In California..................................................11
          2.   California Will Be More Convenient for Willing Witnesses...................11
          3.   Unwilling Witnesses Will Be Subject To Compulsory Process in
               California .................................................................................................12
          4.   Judicial Economy Favors Transfer to California ....................................13
     D.   The Public Interest Factors Favor Transfer to California Or Are Neutral..............14
          1.   California Has a Strong Local Interest in Deciding This Case ...............14
          2.   California Courts Are Less Congested ....................................................15

IV.  CONCLUSION..............................................................................................................15

**I.     INTRODUCTION**

Pursuant to 28 U.S.C. § 1404(a), defendants EMC Corporation ("EMC") and VMware, Inc. ("VMware") move to transfer this patent infringement action to the Northern District of California or, in the alternative, to the Central District of California.

The intellectual property interests asserted in this case have been owned and controlled, for more than nine years, by three California-based companies:  Brilliant Digital Entertainment, Inc. ("Brilliant") and its subsidiaries Altnet, Inc. ("Altnet") and Kinetech, Inc. ("Kinetech") – the original assignee of the patents.[1]  These companies are run by California residents, and have asserted the patents in California courts at least three times.  Indeed, the patents are so tied to California that, in one of these cases, Brilliant's Chief Executive Officer declared in a court filing *opposing* a motion to transfer that it would impose "substantial hardship and burden" to litigate the patents *outside of California*.  See Ex. 1, 2007 Bermeister Decl., ¶ 5.[2]

On July 6, 2011, Brilliant issued a press release announcing the issuance of three of the patents asserted in this case and its intention to enforce the entire portfolio against the storage and cloud computing industries.  See Ex. 2, 7/6/11 Brilliant Press Release.  Two months later, Brilliant and PersonalWeb Technologies LLC ("PersonalWeb") announced the completion of "an asset contribution" through which Brilliant received majority ownership of PersonalWeb, and PersonalWeb received Brilliant's and its subsidiaries' interests in the patents.  See Ex. 3, 9/28/11 PW Press Release.  PersonalWeb had been formed the prior year by a group of California companies and residents.  Less than three months after receiving Brilliant's interests in the patents, PersonalWeb filed this lawsuit against EMC and VMware.

---

[1]  As set forth in EMC's and VMware's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed simultaneously with this motion, the public records on file with the Patent and Trademark Office indicate that PersonalWeb owns only a portion of the patents that it has asserted in this case.

[2]  Unless otherwise noted, all exhibits referenced in this memorandum are appended to the Declaration of Cortney C. Hoecherl in Support of Defendants' Motion to Transfer Venue to the Northern District of California or, in the Alternative, to the Central District of California ("Hoecherl Decl.").

- 1 -

As the Federal Circuit has confirmed in a series of recent decisions, a party's strategic efforts to create ties to a jurisdiction are entitled to no weight in evaluating the appropriate venue. "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011); *see also id.* (courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient").

Even where a plaintiff has legitimate ties to a judicial district, a recent presence and a small number of employees in a given district cannot outweigh substantial ties to another venue. *See, e.g.*, *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012) ("[W]hatever weight might be afforded Plaintiff's presence in the Eastern District is outweighed by the presence of . . . defendants in [California], where the decisions and events giving rise to this case likely were made or occurred."); *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (transferring case despite plaintiff's "small and fairly recent operations in Texas," because defendants developed products in California and "employed thousands of people [there]").

This is clearly a case – like *Microsoft* and *EON* – where the relevant factors weigh strongly in favor of transfer. All of the parties have strong ties to California, the patents themselves have strong ties to California, and the relevant public and private factors overwhelmingly favor venue in the Northern District or Central District of California. VMware's world headquarters, and the large majority of its relevant documents and employees, are located in the Northern District of California. Most of EMC's relevant operations are

similarly located in the Northern District or Central District of California.[3] Although PersonalWeb has yet to identify the products it intends to accuse of infringement with any particularity, given that almost all of VMware's operations and most of EMC's relevant operations are in California, VMware and EMC expect that the large majority of their relevant documents and witnesses will be located in California.

PersonalWeb – and the asserted Patents themselves – also have strong ties to California. PersonalWeb was founded by a group of California companies and residents, and is owned and controlled by its California-based parent company – Brilliant. Defendants expect that California residents associated with these companies will have information relevant to the case. Moreover, Brilliant and its subsidiaries have asserted one or more of the patents in the Central District of California in *three* separate cases. Both of the inventors named on the patents also have significant ties to California – one of the inventors resides in California, the other appears to regularly transact business in California and, as such, is subject to process in California.

Given these strong ties to California, the Northern District and Central District of California have a strong local interest in this controversy. Both districts are less congested than this District; and the Central District of California, having overseen three prior litigations, is familiar with the patents and the technologies underlying them.

The Court, accordingly, should transfer this case to the Northern District of California or, in the alternative, to the Central District of California.

---

[3] Plaintiffs have not identified the products they intend to accuse of infringement with any particularity. For VMware, the Complaint simply references "VMware products and services." Compl. ¶¶ 16, 20, 24, 28, 32, 36, 40, 44. For EMC, the Complaint focuses, for the most part, on companies that EMC has acquired – Data Domain, Avamar, VMware, Isilon, and Greenplum – rather than the products associated with these companies. Compl. ¶¶ 15, 19, 23, 27, 31, 35, 39, 43; *see also* Declaration of Kathleen M. Lyons in Support of Defendants' Motion to Transfer Venue to the Northern District of California or, in the Alternative, to the Central District of California ("Lyons Decl."), ¶¶ 6-11. The Complaint also names two additional broad product families, EMC Centera and EMC Atmos. *Id.*

## II. FACTUAL BACKGROUND

### A. PersonalWeb's Ties to California

PersonalWeb filed this patent infringement lawsuit on December 8, 2011, alleging that VMware and EMC have infringed eight related patents (the "Patents"). *See* Compl. ¶ 2.[4]

PersonalWeb's parent company, Brilliant, and its subsidiaries, Altnet and Kinetech, have controlled the intellectual property interests asserted in this case for more than nine years. Brilliant is a Delaware corporation with its principal place of business in Studio City, California. *See* Ex. 4, CA Sec. State Records. Altnet and Kinetech are also Delaware corporations with the same principal place of business in California. *See* Exs. 5 and 6, CA Sec. State Records.

Brilliant and Altnet acquired their interests in the asserted Patents from Kinetech, the original assignee, in 2002 – initially through a license, and subsequently through an acquisition of Kinetech. *See* Ex. 7, 4/16/07 Business Wire Article; Ex. 2, 7/6/11 Brilliant Press Release. As Brilliant confirmed in announcing the acquisition, the primary motive was to obtain control over Kinetech's patent portfolio. *See* Ex. 7, 4/16/07 Business Wire Article. Brilliant and Kinetech continued to prosecute the portfolio after the acquisition, ultimately leading to the issuance of the last five of the eight patents asserted in this case (the '310, '539, '544, '662, and '096 patents).

On July 6, 2011, Brilliant and Kinetech issued a press release announcing the issuance of the '539, '544, and '662 patents and their intention to enforce the entire portfolio against the storage and cloud computing industries. *See* Ex. 2, 7/6/11 Brilliant Press Release. Kevin Bermeister, CEO of Brilliant and Kinetech, stated in this press release that the companies were continuing to "actively pursue licensing and participation in the operation of businesses that use

---

[4] The patents are U.S. Patent Nos. 5,978,791 ("the '791 patent"), 6,415,280 ("the '280 patent"), 6,928,442 ("the '442 patent"), 7,802,310 ("the '310 patent"), 7,945,539 ("the '539 patent"), 7,945,544 ("the '544 patent"), 7,949,662 ("the '662 patent"), and 8,001,096 ("the '096 patent"). All of the patents claim priority to the same original patent application, U.S. Patent Application No. 08/425,160.

- 4 -

our patents . . . ." *Id.* The same day, Brilliant's business development manager, Michael Speck, stated in a news article that the companies "intend to pursue [alleged] infringers" of the patents. *See* Ex. 8, 7/6/11 IT News Article (linked to Brilliant's Website).

Two months later, on September, 28, 2011, Brilliant and PersonalWeb announced the completion of "an asset contribution" through which Brilliant received majority ownership of PersonalWeb, and PersonalWeb received Brilliant's and its subsidiaries' interests in the Patents. *See* Ex. 3, 9/28/11 PW Press Release. PersonalWeb had been formed the prior year by Michael Weiss, a California resident.[5] Its most senior executives all have substantial California ties – Michael Weiss (CEO) and Wasef Kassis (CTO) own residences in California, and Kevin Bermeister (Non-Executive Chairman) regularly transacts business in California.[6]

Three months after receiving Brilliant's interests in the Patents, PersonalWeb filed this lawsuit. Although PersonalWeb claims to be a "proud member of the East Texas community" and to be collaborating with the University of Texas at Tyler, it announced this collaboration just two days prior to filing this suit. Ex. 9, 12/6/11 PW Press Release.

### B. The Patents' and Inventors' Ties to California

In addition to Brilliant's and PersonalWeb's ties to California, the Patents themselves have strong ties to California. One of the two named inventors, David A. Farber, resides in Ojai, California. *See, e.g.,* Ex. 10, '096 patent (issued 8/16/11, identifying Farber's residence as

---

[5] PersonalWeb, Inc. was formed by Michael Weiss, Murray Markiles, and Mark Dyne. *See* Ex. 16, 5/12/10, PersonalWeb Certificate of Formation. Although Weiss, Markiles, and Dyne each listed the same Tyler, Texas address in the Certificate of Formation, all three own residences in California and appear to be California residents. *Id,*; *see also* Ex. 12, Accurint Finder Report for Michael Weiss; Ex.14, Accurint Finder Report for Murray Markiles; Ex. 15, Accurint Finder Report for Mark Dyne. Weiss subsequently formed PersonalWeb Technologies, LLC, with Claria Innovations, LLC of Sherman Oaks, California as the sole member. *See* Ex. 11, 8/5/10, PersonalWeb LLC Certificate of Formation.

[6] Weiss and Kassis both own residences in California and appear to reside in California. *See* Ex. 12, Accurint Finder Report for Weiss; Ex. 13, Mr. Weiss's LinkedIn page (indicating he is in the Greater Los Angeles Area); Ex. 17, Accurint Finder Report for Kassis. Bermeister, now PersonalWeb's Non-Executive Chairman, also appears to have resided in California, or at least to have maintained a residence there. *See* Ex. 18, Accurint Finder Report for Bermeister. Mr. Bermeister regularly transacts business in California at least through Brilliant.

- 5 -

Ojai).[7] The other named inventor, Ronald Lachman, has founded, advised, or served as a director for multiple California-based companies.[8] Moreover, Brilliant and its subsidiaries have asserted one or more of the Patents – at least *three times* – in the Central District of California, including in a 2004 action against the Recording Industry Association of America that remained pending for more than two years, a 2006 action against Streamcast Networks, Inc. that remained pending for more than a year, and a 2007 action against The Lime Group, Inc. that remained pending for two years.[9] In the last of these cases, Brilliant and its California-based subsidiaries successfully opposed a motion to transfer the case from California to New York on the ground that litigating *outside* of California would impose "substantial hardship and burden" because "[a]ll of the Plaintiffs' relevant files, software, and business operations are located in the Los Angeles area[,]" their employees were located in the Los Angeles area, and many "key witnesses" were located in California. *See* Ex. 1, 2007 Bermeister Decl., ¶¶ 5, 6.

### C. VMware's and EMC's Ties to California

VMware and EMC have equally strong ties to California. VMware's world headquarters and almost all of its potentially relevant operations are in Palo Alto, California.[10] *See* Declaration of Betsy Sutter in Support of Defendants' Motion to Transfer Venue to the Northern District of California or, in the Alternative, to the Central District of California ("Sutter Decl."),

---

[7] *See also* Ex. 19, Farber Facebook Page (confirming he lives in Ojai, California).

[8] Lachman is the founder of Catbird Networks, Inc., a company located in Scotts Valley, California. *See* Ex. 20, Excerpt from Catbird Networks Website. A profile for Mr. Lachman indicates that he has also served as a founder, advisor, and/or director for multiple other California-based companies including Santa Cruz Operation (located in Santa Cruz, CA), Internet Dynamics (located in Fremont, CA), 2Bridge (located in San Francisco, CA), Sandpiper Networks (located in Thousand Oaks, CA), and Telemedia Devices (located in Palo Alto, CA). *See* Ex. 21, CenterGate Profile for Lachman (identifying ties to these companies).

[9] The 2004 litigation was captioned *Altnet, Inc., et al v. Recording Industry Association of America, et al* (2:04-cv-07456-JFW-CT); the 2006 litigation was captioned *Altnet, Inc., et al v. Streamcast Networks, Inc., et al* (2:06-cv-050S6-EDW-E); and the 2007 litigation was captioned *Kinetech, Inc., et al v. The Lime Group, Inc. et al* (2:07-cv-06161-VBF-PLA).

[10] EMC owns a majority interest in VMware.

¶ 4. While EMC's world headquarters are in Massachusetts, three of the six EMC entities identified in the Complaint (not counting VMware) are located in California – Data Domain in Santa Clara, California; Avamar in Irvine, California; and Greenplum in San Mateo, California. *See* Lyons Decl.**,** ¶¶ 6-8. A fourth EMC entity identified in the Complaint, Isilon, is located in Seattle, Washington (and thus much closer to California than Texas). *See* Lyons Decl.**,** ¶ 9; *see also* Hoecherl Decl., ¶ 34.[11] Collectively, VMware and EMC employ more than 6,500 people in California. *See* Sutter Decl., ¶ 4; Lyons Decl.**,** ¶ 4. None of the Defendants' relevant operations are located in Texas.[12] *See* Sutter Decl., ¶¶ 6-9; *see also* Lyons Decl.**,** ¶¶ 6-12.

### D. The Bulk of Relevant Documents Are in California

PersonalWeb has yet to identify the products that it intends to accuse of infringement with any particularity – instead, it has simply identified VMware and six other EMC entities. Given that almost all of VMware's relevant operations are located in California, and most of EMC's relevant operations are in California, Defendants believe that the bulk of their relevant documents will be located in California. *See* Sutter Decl., ¶¶ 6, 9; Lyons Decl.**,** ¶¶ 6-12.

Brilliant's, Altnet's and Kinetech's documents relating to the Patents and their ownership, prosecution, and prior assertions also appear to be located in California. *See* Ex. 1, 2007 Bermeister Decl., ¶¶ 5, 6. Indeed, in opposing the motion to transfer the case against The Lime Group from California to New York, Brilliant's CEO confirmed that "[a]ll of [Brilliant, Altnet and Kinetech's] relevant files . . . are located in the Los Angeles area." *Id.* ¶ 5.

---

[11] The remaining two EMC product families – Centera and Atmos – were developed in Massachusetts. *See* Lyons Decl., ¶¶ 10-11.

[12] EMC has a very large number of local sales, professional services and customer support offices spread across the United States and the globe, including offices in Texas. EMC does not anticipate that its offices in Texas will have any significant documents relevant to this case. At the very most, the local office records in Texas will be largely duplicative of the records maintained at EMC's sales headquarters in Hopkinton, Massachusetts. *See* Lyons Decl.**,** ¶ 12. Similarly, two of VMware's approximately 115 field offices spread across the globe are located in Texas, one in Dallas and one in Austin. Like EMC, VMware does not anticipate that these field offices will have any significant documents relevant to this case. At the very most, they may have a few records that will be duplicative of the records maintained at VMware's sales headquarters in Palo Alto, California. *See* Sutter Decl., ¶¶ 7-9.

### E. The Bulk of Relevant Witnesses Are in California

Defendants anticipate that the large majority of their employees with information relevant to the case will be located in California. *See* Sutter Decl., ¶¶ 6-7; Lyons Decl., ¶¶ 6-11. None of these witnesses will be located in Texas. *See* Sutter Decl., ¶ 9; Lyons Decl., ¶¶ 6-11.

Defendants also expect that a number of other individuals located or working in California will have information relevant to the case. Most significantly, as referenced above, one of the two inventors named on the Patents resides in California, and the second appears to regularly transact business in California. *See, supra,* § II.B. Significant prior art inventors and prior licensees of the Patents also appear to reside in California.[13] A significant witness associated with Digital Island, Inc. (to which Kinetech transferred a 50% interest in the Patents) – Howard Lasky – also resides in California and has information relevant to Defendants' standing defense.[14] Furthermore, a number of individuals associated with Brilliant, Altnet, and Kinetech also will have information relevant to the case, including Defendants' laches, equitable estoppel, standing, and damages-related defenses. *Id.* Again, as Brilliant's CEO confirmed in opposing transfer of *The Lime Group* case from California to New York, inventor David Farber has "unique knowledge that makes him an essential witness at trial," and Brilliant, Altnet and Kinetech employees, also residing in California, "have knowledge regarding patent ownership . . . and damages-related issues . . . ." *See* Ex. 1, 2007 Bermeister Decl., ¶ 6; *see also* Ex.22, Brilliant's Opp. to Motion to Transfer, at 6.

---

[13] The inventor of at least one significant prior art patent is located in Northern California. Dr. Martin Hellman is a professor at Stanford University in Palo Alto, California and the inventor of U.S. Patent No. 4,658,093, entitled "Software Distribution System," which was the principal prior art reference in the reexamination of the '442 patent. Ex. 23, Hellman's profile from Stanford; *see also* In re Reexamination of U.S. Patent No. 6,928,442. The Patents have been previously licensed to Audible Magic Corp. (located in Los Gatos, CA) and Skype (whose North American Headquarters is located in Palo Alto, CA). *See* Ex. 2, 7/6/11 Brilliant Press Release; Ex. 25, CA Sec. of State Records; and Ex. 26, 3/1/11 GlobeSt.com Article.

[14] Kinetech transferred a 50% interest in the Patents to Digital Island, Inc. before transferring the remaining interest to PersonalWeb. Digital Island representatives, including at least Howard Lasky who signed the relevant agreement, have information relevant to Defendants' standing defense *See EMC's and VMware's Motion to Dismiss for Lack of Subject Matter Jurisdiction; see also* Ex. 28, Accurint Finder Report for Howard Lasky.

Finally, PersonalWeb's three most senior executives – Michael Weiss, Wasef Kassis, and Kevin Bermeister – all have substantial California ties. *See, supra,* § II.A. Defendants expect that these individuals also will have information relevant to their laches, equitable estoppel, standing, and damages-related defenses.

## III. EITHER CALIFORNIA DISTRICT IS A MORE CONVENIENT FORUM

### A. Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is appropriate upon a "good cause" demonstration by the moving party "that the transferee venue is clearly more convenient." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").[15]

In deciding whether a transferee venue is "clearly more convenient", the Court must assess and balance both private and public interest factors. *Id.* at 315. The plaintiff's choice of venue is ***not*** a factor in this analysis. *Id.* at 314 n.10. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* at 315.

---

[15] There should be no dispute that this case could have been brought in the Northern District or Central District of California. A patent infringement action may be brought in any judicial district "where the defendant resides," and a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §§ 1400(b) and 1391(c).

### B. Brilliant's and PersonalWeb's Strategic Efforts To Create Ties To This District Should Not Be Accorded Any Weight

In assessing the relevant venue factors, a court should not "honor [plaintiff's] connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011). PersonalWeb's claimed ties to Texas are clearly strategic. As referenced above, Brilliant only recently transferred its interests in the Patents to PersonalWeb – *after* announcing its intentions to enforce the Patents against the storage and cloud computing industries – and Brilliant has retained majority ownership of PersonalWeb. In fact, Brilliant's efforts to create venue in this District are so transparent that they have been the subject of multiple third party commentaries. *See, e.g.,* Ex. 24, 12/12/11 IT News Article (commenting that PersonalWeb "was deliberately established in the state [Texas]" because it is a "favourable jurisdiction").

As the Federal Circuit has repeatedly confirmed, a party's strategic efforts to create ties to a particular jurisdiction are entitled to no weight in evaluating the appropriate venue. *See, e.g., In re Microsoft Corp.*, 630 F.3d at 1364 ("The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation."); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381-82 (Fed. Cir. 2010) (patentee's presence in Texas was entitled to no weight where it "appears to be recent, ephemeral, and an artifact of litigation"); *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) ("plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within [the] prohibited activities" under Supreme Court cases).

### C. The Private Interest Factors Favor Transfer to California

Most of the likely witnesses and documents in this case are located in California. Accordingly, the private interest factors weigh heavily in favor of transfer.

- 10 -

### 1. The Relevant Evidence Is In California

"[T]ypically in a patent case, the defendant has the majority of relevant documents." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 U.S. Dist. LEXIS 104616, at *15 (E.D. Tex. Sept. 30, 2010). "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech,* 566 F.3d at 1345.

Although PersonalWeb has not specifically identified the products it intends to accuse of infringement, given that the bulk of VMware's and EMC's relevant operations are in California, Defendants expect that the bulk of their relevant documents also will be located in California. *See* Sutter Decl., ¶¶ 6, 9; Lyons Decl.**,** ¶¶ 6-12. As Brilliant's CEO confirmed in opposing transfer of *The Lime Group* case, most of the documents relevant to the asserted Patents, and to their ownership, prosecution, and prior assertion, are also located in California. *See, supra,* § II.C; *see also* Ex. 1, 2007 Bermeister Decl., ¶ 5. PersonalWeb, in contrast, is not likely to have any significant amount of relevant documents, given that it had no involvement with the Patents until July of 2011.

Accordingly, this factor weighs heavily in favor of transfer to California.

### 2. California Will Be More Convenient for Willing Witnesses

The convenience and cost of attendance for witnesses – "the single most important factor in the transfer analysis" – also heavily favors transfer. *In re Genentech*, 566 F.3d at 1343.[16]

As noted above, VMware expects that the bulk of its relevant witnesses will be located in California, and EMC anticipates that most of its witnesses also will be located in California. *See,*

---

[16] The Fifth Circuit has adopted a "100-mile rule," which requires that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Genentech*, 566 F.3d at 1343. Thus, the 100-mile rule favors transfer where the proposed venue is a shorter average distance away from witnesses than the plaintiff's chosen venue. *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

- 11 -

*supra,* § II.C.; *see also* Sutter Decl., ¶¶ 6-8; Lyons Decl.**,** ¶¶ 6-11.  To testify at trial in this District, these witnesses would be burdened with a trip of no less than 1336 miles – which would last close to five hours and require at least two separate flights.[17]  *See* Hoecherl Decl., ¶ 32; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (failure to consider that witnesses would have to travel approximately 900 more miles to attend trial in Texas than in transferee district was "clear error").

California is also significantly more convenient for the two named inventors on the Patents, and for PersonalWeb's own executive officers.  *See, supra,* §§ II.A, II.B.  These witnesses will have relevant information relating to the Patents, to the ownership, prosecution, and prior assertions of the Patents, and to Defendants' standing and damages-related defenses.

Accordingly, this factor also weighs strongly in favor of transfer.  *See, e.g., Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 WL 194382, at *6 (E.D. Tex Jan. 23, 2012) (granting transfer where "[t]he number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant information residing in Northern California").

### 3. Unwilling Witnesses Will Be Subject To Compulsory Process in California

To the extent the inventors are not willing to participate in this case voluntarily, both would be subject to compulsory process in California (but not in the Eastern District of Texas).  As discussed above, inventor David Farber resides in Ojai, California, and inventor Ronald Lachman regularly transacts business in California.  *See, supra,* § II.B; *see also*  Fed. R. Civ. P. 45(c)(3)(A)(ii).   Significant witnesses associated with Digital Island (to whom Kinetech

---

[17] The shortest commercial flight from Los Angeles, California to Tyler, Texas is 1336 miles (on two separate flights), and the shortest commercial flight from San Francisco, California to Tyler, Texas is 1566 miles (on two separate flights).  *See* Hoecherl Decl., ¶ 32.  The witnesses within the chosen California district will only have a short car ride to testify, while those California witnesses outside of the chosen district will only need to take a short commercial flight between San Francisco and Los Angeles of approximately 339 miles.  *Id.*, ¶ 33.

transferred a 50% interest in the Patents), prior art, and prior licenses – relevant to Defendants' standing, validity and damages defenses – also reside in California. *See, supra,* § 2(e).

In addition to these witnesses, Defendants expect that they also will likely call as witnesses various individuals associated with Brilliant, Altnet, and Kinetech, all of whom live or regularly transact business in the Central District of California, including at least Kevin Bermeister, Anthony Neumann, and the Kinetech employees involved in the decision to approach EMC about the '791 and '280 Patents in 2004. These witnesses have information relevant to the ownership, prosecution, and prior assertions of the Patents, and to Defendants' laches, equitable estoppel, standing, and damages-related defenses.[18]

All of these witnesses are subject to the Central District's absolute subpoena power for depositions and for trial, as well as the Northern District's subpoena power for trial. *See* Fed. R. Civ. P. 45; *see also Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state . . . ."). Accordingly, this factor also weighs heavily in favor of transfer.

### 4. Judicial Economy Favors Transfer to California

Judicial economy also weighs in favor of transferring this case to California. This case has only recently been filed, and this Court has not yet decided any substantive issues. *See, e.g.*, *Internet Machs. LLC v. Alienware Corp.*, No. 6:10-cv-023, 2011 U.S. Dist. LEXIS 66207, at

---

[18] Defendants have particularly strong laches and equitable estoppel defenses. Kinetech approached EMC twice in 2004 to discuss the '791 and '280 patents, but after EMC explained the reasons that it was not infringing the patents, Kinetech never brought suit. *See* Lyons Decl.**,** ¶¶ 13-14. Given the length of the delay, there is a presumption of laches. *See, e.g., A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1035-36 (Fed. Cir. 1992) ("[T]he underlying critical factors of laches are presumed upon proof that the patentee delayed filing suit for more than six years . . . ."); *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337-40 (Fed. Cir. 1998) (applying *Aukerman* in affirming district court's grant of summary judgment).

Defendants also have a particularly strong standing defense because PersonalWeb owns only a portion of the Patents. *See EMC's and VMware's Motion to Dismiss for Lack of Subject Matter Jurisdiction.* Brilliant, Altnet, and Kinetech representatives, including at least Kevin Bermeister and Anthony Neumann, and Digital Island representatives, including at least Howard Lasky, have been involved in the relevant transactions and have information relevant to this defense. *See* Ex. 18, Accurint Finder Report for Kevin Bermeister*; See* Ex. 27, Accurint Finder Report for Anthony Neumann; *See* Ex. 28, Accurint Finder Report for Howard Lasky.

*26-28 (E.D. Tex. June 7, 2011) (stating that transfer is more convenient if the request is before a scheduling order is issued). In contrast, the Central District of California has presided over ***three*** lengthy cases involving one or more of the Patents. *See, supra,* § II.B; *see also Interactive Music Tech., LLC v. Roland Corp. U.S.*, No. 6:07-cv-282, 2008 WL 245142, at *9-11 (E.D. Tex. Jan. 29, 2008) (judicial economy favors transfer where another court "already has some familiarity with the patents at issue"). Accordingly, this factor also weighs in favor of transfer.

### D. The Public Interest Factors Favor Transfer to California Or Are Neutral

The public interest factors also weigh strongly in favor of transfer to California.

#### 1. California Has a Strong Local Interest in Deciding This Case

California has a strong local interest in this case because almost all of VMware's relevant operations, and most of EMC's relevant operations, are in California. Moreover, as discussed above, Defendants collectively employ more than 6,500 people residing in California. *See, supra,* § II.C; Sutter Decl., ¶ 4; Lyons Decl.**,** ¶ 4. These connections create a strong local interest because this case calls into question the "work and reputation" of these individuals. *See, e.g.*, *In re Hoffman-La Roche*, 587 F.3d at 1336 (local interest strong where case "calls into question the work and reputation of several individuals residing in or near that district"); *In re TS Tech*, 551 F.3d at 1321. The inventors' presence in California further augments this strong local interest. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (local interest favored transfer where "the companies alleged to cause . . . harm are all residents of that district, as are the inventor and patent prosecuting attorneys whose work may be questioned at trial").

Although Brilliant has tried to create a connection to this District by transferring the asserted Patents to PersonalWeb, this attempt to manufacture venue is entitled to no weight in evaluating the relevant local interests. *See In re Microsoft Corp.*, 630 F.3d at 1364-65 (incorporation entitled to no weight where done "in anticipation of litigation"). Moreover, even

- 14 -

where a plaintiff has legitimate ties to a judicial district, a recent presence and a small number of employees cannot outweigh the strong local interest of another venue. *See, e.g., Network Prot. Scis.*, 2012 WL 194382, at * 7 (local interest favored transfer where "[d]efendants developed the allegedly infringing products in the Northern District of California and collectively employ thousands of people residing in California," while plaintiff had only "small and fairly recent operations in Texas"); *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364 (E.D. Tex. Feb. 15, 2012) (same); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (granting transfer, despite plaintiff's incorporation in Texas two years prior to suit, because plaintiff's presence was "outweighed" by defendants' presence in California).

Accordingly, California's strong local interest heavily favors transfer.

### 2. California Courts Are Less Congested

The median time from filing to trial is 25.4 months in the Northern District of California, and 19.9 months in the Central District of California. *See* Ex. 29, Table C-5 from the Administrative Office of the U.S. Courts. In contrast, the median time to trial is 27.1 months in the Eastern District of Texas. *Id.* Accordingly, this factor also favors transfer to either California district. *See In re Genentech*, 566 F.3d at 1347 ("To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor.").[19]

## IV. CONCLUSION

For the reasons stated above, the relevant private and public interest factors weigh heavily in favor of transfer to California.

---

[19] The remaining public interest factors are neutral.

Dated: February 27, 2012

OF COUNSEL:

William F. Lee
Cynthia D. Vreeland
Anna E. Lumelsky
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Robert Galvin
Cortney C. Hoecherl
WILMER CUTLER PICKERING HALE
AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6000

/s/ Michael E. Jones
Michael E. Jones
Texas Bar No. 10929400
Potter Minton, a Professional Corporation
110 North College Avenue, Suite 500
Tyler, TX 75702
903-525-2239
mikejones@potterminton

*Attorneys for Defendants EMC Corporation and VMWare, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3)(A) on February 27, 2012.

/s/ *Michael E. Jones*
Michael E. Jones

## CERTIFICATE OF CONFERENCE

      The undersigned hereby certifies that counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on February 22 and February 23, 2012 via telephone conference with the following participants: Lawrence Hadley for the Plaintiffs and Cynthia Vreeland and Anna Lumelsky for the Defendants. No agreement could be reached because the parties disagreed on the merits. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

      /s/ *Michael E. Jones*
      Michael E. Jones