IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> EMC Corporation and VMware, Inc., § <br> § <br> Defendants. § <br> § <br> § | Civil Action No. 6:11-cv-660 (LED) <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S RESPONSE IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | INTRODUCTION | 1 |
| **II.** | FACTUAL BACKGROUND | 1 |
| | A. Personalweb's Ties To Tyler, Texas | 1 |
| | B. Witness Ties To Tyler, Texas | 3 |
| | C. The Defendants' Ties To Texas And To The Eastern District Of Texas | 4 |
| **III.** | LEGAL STANDARD | 4 |
| **IV.** | TRANSFERRING THIS CASE TO CALIFORNIA IS NOT CLEARLY WARRANTED | 5 |
| | A. The Local Interest Of The Eastern District Of Texas Weighs Against Transfer. | 5 |
| | B. Access To Sources Of Proof Weighs Strongly Against Transfer. | 8 |
| | 1. Defendants Ignore Substantial Sources Of Party Proof Outside Of The NDCA And CDCA—Including A Large Amount In Texas | 8 |
| | 2. The Defendants Ignore Substantial Sources Of Non-Party Proof Outside Of The NDCA And CDCA—Including A Large Amount In Texas. | 10 |
| | C. The Availability Of Compulsory Process Weighs Against Transfer. | 11 |
| | D. The Cost Of Attendance For Willing Witnesses Weighs In Favor Of Keeping The Case In This District | 12 |
| | E. The "Practical Problems" Factor Weighs Against Transfer. | 13 |
| | F. The "Administrative Difficulties" Factor Weighs Against Transfer. | 13 |
| | G. Judicial Economy Favors Keeping The Case In This District | 13 |
| **V.** | CONCLUSION | 15 |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Balawajder v. Scott*,
 160 F.3d 1066 (5th Cir. 1998) ...................................................................................................4

*Balthaser Online, Inc. v. Kimberly-Clark Corp.*,
 Civil Action No. 2:09–188–TJW, 2011 WL 1235143 (E.D. Tex. Mar. 30, 2011)..................11

*Data, LLC v. Packeteer, Inc.*,
 2009 U.S. Dist. LEXIS 81067 (E.D. Tex., Mar. 5, 2009)....................................................9, 12

*Droplets, Inc. v. E-Trade Financial Corp., et al.*,
 Case No. 2:11-cv-255, Dkt. No. 99 (E.D. Tex. May 5, 2012).................................................14

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
 2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) .....................................................7

*Hoffman-LaRoche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009)..............................................................6, 7

*In re Volkswagen AG,*
 371 F.3d 201, 2004 U.S. App. LEXIS 9683, 28 A. ...................................................................8

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) ....................................................................................4, 5, 12, 13

*In re Volkswagen of Am.*,
 566 F.3d 1349 (Fed. Cir. 2009)............................................................................................5, 14

*In re Zimmer Holdings*, *Inc.*,
 609 F.3d 1378 (Fed. Cir. 2010)..............................................................................................6, 7

*MHL TEK, LLC v. Nissan Motor Co.*,
 No. 2:07-CV-289, 2009 U.S. Dist. LEXIS 13676 (E.D. Tex. Feb. 23, 2009) ..........................5

*Motorola, Inc. v. Vtech Communications, Inc.*,
 No. 5:07-CV-171 .......................................................................................................................9

*Personal Audio, LLC v. Apple, Inc.*,
 No. 9:09-CV-111, 2010 U.S. Dist. LEXIS 11899 (E.D. Tex. Feb. 11, 2010) ..........................7

*PersonalWeb v. Caringo, Inc.*,
 No. 6:11-cv-00659 (E.D. Tex.)...........................................................................................10, 13

*PersonalWeb v. NEC Corp. of Am., Inc.* (6:11-cv-00655) ...........................................................13

Plaintiff PersonalWeb Technologies LLC ("PersonalWeb") submits this response brief in opposition to the motion to transfer venue, Dkt. No. 13 ("Motion" or "Mot."), from the Eastern District of Texas (the "EDTX") to the Northern District of California (the "NDCA") or alternatively to the Central District of California (the "CDCA") filed by EMC Corporation ("EMC") and VMware, Inc. ("VMware") (collectively, the "Defendants").

## I.  INTRODUCTION

Defendants' Motion should be denied.  To succeed, Defendants must demonstrate that the NDCA or the CDCA is clearly more convenient than the EDTX as the forum for the cases in which PersonalWeb asserts patent infringement claims based on the eight patents in suit (collectively called the "Truenames patents."). As detailed below, Defendants cannot meet their heavy burden for five reasons.  ***First***, PersonalWeb has strong, extensive, and exclusive ties to this judicial district.  ***Second***, Defendants' arguments regarding PersonalWeb's founders' ties to California are wholly contrived and legally irrelevant.  ***Third***, the location of documents and witnesses relevant to PersonalWeb disfavor any transfer.  ***Fourth***, EMC and VMware overstate their ties to California and understate their ties elsewhere.  ***Fifth***, PersonalWeb filed six separate cases in this Court asserting the same portfolio of patents; as such, if this Court were to transfer venue in any of the related cases, at least two cases will still remain here, resulting in duplicative judicial work and the risk of inconsistent judicial determinations and inconsistent jury verdicts.

## II.  FACTUAL BACKGROUND

### A.  PersonalWeb's Ties to Tyler, Texas

PersonalWeb has been incorporated in Smith County, Texas since 2010.  *See* Weiss Decl. at ¶ 3.  PersonalWeb's Chief Executive Officer, Michael Weiss, and Chief Technology Officer, Wasef Kassis, both reside in Tyler, Texas.  *See id.* at ¶¶ 5, 7.  PersonalWeb's four other full-time employees, including Director of Technology Charles Thomas and Software Developer Bill Zink,

all live in Tyler, Texas. PersonalWeb's main servers are located in a Tyler, Texas datacenter. *See* id. at ¶ 7. PersonalWeb has nine part-time employee, including paid student interns, all located in Tyler. *See* id. at ¶ 8. PersonalWeb leases 3,740 sq feet of office space in downtown Tyler pursuant to a long term lease where all its employees conduct business. All of PersonalWeb's tangible and intangible property, including all of the company's electronic and non-electronic files, books, and records, are located in Tyler. *See* id. at ¶ 11. Specifically, PersonalWeb's main servers are located in a secure Tyler datacenter, PersonalWeb's development servers are located in downtown Tyler, and PersonalWeb's bandwidth for its servers is provided by a local Tyler ISP provider. *See* id. In addition, PersonalWeb is currently testing its StudyPods product with students from UT Tyler through a beta-testing program utilizing Smith County residents. *See* id. at ¶ 8. PersonalWeb also operates a Capstone project with the UT Tyler where students help design and create elements of PersonalWeb's products. *See* id.

In 2011, PersonalWeb's accounting firm, a local Tyler firm owned in part by the current mayor of Tyler, filed PersonalWeb's federal and state tax returns. *See* id. at ¶ 10. A local Tyler architect, DeWayne Manning, designed the Company's offices and oversaw its renovation and leasehold improvements. *See* id. PersonalWeb has been a member of the Tyler Chamber of Commerce since September 2010. *See* id. at ¶ 4. PersonalWeb's CEO Michael Weiss is a member of, and regularly attends the meetings of, the Technology Committee of the Tyler Chamber of Commerce. *See* id. at ¶ 6. Mr. Weiss is also a member of Greater East Texas IT Professionals (GET IT). *See* id. PersonalWeb's employees are all active participants in the community and the social fabric of Smith County and Tyler Texas. *See* id. at ¶¶ 7-8.

PersonalWeb acquired the eight of the Truenames patents in July 2011. *See* Weiss Decl.; Exs. A.32-A.35. At that time, documents and records related to the Truenames patents were

acquired by PersonalWeb and transferred to PersonalWeb's offices in Tyler.  *See* Weiss Decl. at 12.  Subsequently, two additional Truenames patents were issued directly to PersonalWeb.

### B. Witness Ties to Tyler, Texas

A number of relevant third-party witnesses, including one of the co-inventors of all eight Truenames patents, live closer to this judicial district than to California.  Both co-inventors, as well as officers of third-party companies identified in Defendants' motion to transfer, have agreed to travel to Tyler if their testimony is needed and have represented that doing so would not pose any inconvenience.  *See* Farber Decl., Lachman Decl. Siritzky Decl.. Weiss Decl., Bermeister Decl., Dyne Decl., Markiles Decl., and Neumann Decl.  Defendants assert that one of the named inventors, Ronald Lachman, has ties to California-based companies.  But Mr. Lachman resides in Illinois, and he has no day-to-day responsibilities for the operations of any company located in California.  *See* Lachman Decl. at ¶ 3.

Defendants also claim that a Digital Island executive, residing in California, will be a "significant witness." (Mot. at 8.)  That cannot be so.  Digital Island's rights in the Truenames patents were wholly transferred to Level 3 Communications.  Defendants know this; they have filed a separate motion to dismiss because Level 3 did not originally join as a co-plaintiff in this litigation (but that has now been remedied).  Highly relevant to Defendants' motion is the fact, undisclosed by Defendants, that Level 3 is located in Broomfield, Colorado, which is closer to this District than to either the CDCA or the NDCA.  *See* Ex. A.30.  Level 3 also has a number of offices located in Texas, including one office located in this District.  *See* Ex. A.31.  Level 3 has no substantial ties to California.  Further, the attorney who drafted the agreement, and who also prosecuted the Truenames patents before the Patent and Trademark Office, Brian Siritzky, resides in Maryland, and has agreed to attend trial in Texas if needed.  *See* Siritzky Decl. at ¶¶ 4, 8.

### C. The Defendants' Ties to Texas and to the Eastern District of Texas

Defendants have many ties to Texas and to Tyler. EMC maintains offices in the Texas cities of Addison, Arlington, Austin, Corpus Christi, Dallas, Houston, Irving, Lackland, Plano, Port Neches, Richardson, San Antonio, Southlake, and the Woodlands. *See* Exs. A.1 and A.2. Plano, Texas and Port Neches, Texas are in the EDTX. Numerous former and current EMC employees currently work and reside in Texas. Specifically, there are 866 people who claim to be current or past employees of EMC within a 100-mile radius of the ZIP code 75702. *See* Ex. A.3. Of its current employees, these individuals hold technical positions at EMC such as Senior Technical Consultant, Senior Infrastructure Consultant, Solutions Principal, Senior Program Manager Consultant, Senior Manager, Managing Director Americas, Global Account Manager, Engagement Manager, and Systems Engineer. *See id*.

Similarly, VMware, of which EMC owns a majority interest, has significant ties to Texas. Although based in California, VMware has 2 offices in Texas. *See* Ex. A.4. From these offices, VMware has 42 people who claim to be current employees of VMware within a 100-mile radius of the ZIP code 75702. *See* Ex. A.5.

Finally, EMC and VMware maintain servers and operate infringing business activates directly in Tyler. For example, on March 19, 2012, EMC announced that Tyler Independent School District will use an EMC and VMware system for its entire IT infrastructure and data storage needs. *See* Ex. A.6.

### III. LEGAL STANDARD

The district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916, 919 (5th Cir. 1987). The party seeking to transfer venue must show "good cause" for the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)

("*In re Volkswagen II*"). To demonstrate "good cause," a movant "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (citations omitted). The plaintiff's choice of forum is the reason a movant must meet a high burden to obtain transfer. *Id*. at 315 n.10. "Thus, when ***the transferee venue is not clearly more convenient than the venue chosen by the plaintiff***, the plaintiff's choice should be respected." *Id*. at 315 (emphasis added); *see also MHL TEK, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 U.S. Dist. LEXIS 13676, at *13 (E.D. Tex. Feb. 23, 2009), mandamus denied by *In re Volkswagen of Am.*, 566 F.3d 1349 (Fed. Cir. 2009) ("*In re Volkswagen III*").

The Fifth Circuit applies the public factors and private factors that are used to determine *forum non conveniens* in deciding the need for a 1404(a) transfer. *In re Volkswagen II*, 545 F.3d at 315. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id*. The public-interest considerations include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *Id*. These factors are not exhaustive or exclusive and "none . . . can be said to be of dispositive weight." *Id*.

**IV. TRANSFERRING THIS CASE TO CALIFORNIA IS NOT CLEARLY WARRANTED**

    **A. The Local Interest of the Eastern District of Texas Weighs Against Transfer.**

PersonalWeb is incorporated in Texas and operates its business in Tyler. PersonalWeb's

presence—indeed its only presence—is in this District through its facilities, operations and employees. Defendants also maintain a significant presence in Texas through their operations, offices, and employees. For these reasons, local interests favor keeping the case in this district.

Since its creation in Texas in 2010, PersonalWeb has engrained itself into the local business community in Tyler, Texas. PersonalWeb's extensive ties to the District are detailed in § II.A, *supra*, and in the Declaration of Michael Weiss, PersonalWeb's CEO. Defendants argue that the Court should give ***no weight*** to PersonalWeb's significant ties to the EDTX based on their assertion that PersonalWeb's ties to EDTX are "clearly strategic" and motivated solely by litigation considerations. (Mot. at 10.) This is nothing more than *ipse dixit* lawyer argument. Defendants' assertion not only lacks support, they entirely ignore PersonalWeb's substantial and extensive business operations in Tyler.

The authorities that Defendants cite for ignoring PersonalWeb's substantial connections to Tyler and its choice of forum are entirely inapposite. For example, Defendants cite *Hoffman-LaRoche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009). (Mot. at 10.) But the *Hoffman* decision rested in the Federal Circuit's observation that there "appear[ed] to be no connection between [the] case and the Eastern District of Texas," except 75,000 pages of documents in electronic format that plaintiff had transferred to the district in anticipation of litigation. *Id*. at 1337. Unlike *Hoffman*, PersonalWeb's ties to Tyler are manifest and substantial. Over the past two years, PersonalWeb has created a business and, with the assistance of UT Tyler, has developed technology products using the inventions claimed in the patents at issue in this case. Defendants offer no evidence disproving these facts.

Defendants' reliance on *In re Zimmer Holdings*, *Inc*., 609 F.3d 1378 (Fed. Cir. 2010), is equally misplaced. (Mot. at 10.) The Federal Circuit based its decision in *Zimmer* on the fact

6

that the plaintiff's presence in Texas was "recent, ephemeral, and an artifact of litigation." *Id*. at 1381-82. PersonalWeb's business operations in Tyler cannot be fairly characterized as recent, ephemeral, or an artifact of litigation. Even if PersonalWeb had just located in Tyler (which it did not), this Court has rejected the notion that some "waiting" period exists before a plaintiff can enforce its intellectual property after establishing a business in this judicial district. *Personal Audio, LLC v. Apple, Inc.*, No. 9:09-CV-111, 2010 U.S. Dist. LEXIS 11899, at *10 (E.D. Tex. Feb. 11, 2010) (denying a motion to transfer, noting that the Court "found neither a statute that states, nor a case that holds, that there is a mandatory waiting period in which a plaintiff cannot file suit in a judicial district after incorporating in that district.").

Unlike *Hoffman* and *Zimmer*, the facts here are entirely in line with this Court's recent *Eolas* decision. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010). Just as Defendants argue here, the defendants in *Eolas* contended that the Eolas' location within the Eastern District of Texas should be disregarded because it was recent and insubstantial. *Eolas Technologies,* 2010 U.S. Dist. LEXIS 104125 at *20-21. This Court rejected the defendants' request to ignore Eolas' connection to the Eastern District of Texas because the evidence showed that Eolas was truly conducting its normal business in the judicial district and had genuinely relocated its business to Texas. *Id.* The facts here are not as close as in *Eolas*. PersonalWeb did not "recently" relocate to Tyler. PersonalWeb established its business in Tyler from the outset two years ago; PersonalWeb's CEO and Chief Technology Officers reside in Tyler, and all its employees reside in the Tyler area.[1] It is substantially more convenient for

---

[1] Defendants note that Michael Wiess, PersonalWeb's CEO, and Waseff Kassis, PersonalWeb's Chief Technology Officer, both own property in California. (Mot. at 5.) That fact lacks relevance. People often own property in many states. For venue purposes, the relevant consideration is where the potential witnesses do business and reside. Messrs. Weiss, Kassis, and all other potential PersonalWeb employees reside and do business in Tyler, Texas. *See* Weiss Decl. at ¶ 5.

PersonalWeb to maintain this action here rather than in California. PersonalWeb's substantial connection to the EDTX weighs the "local interest" factor heavily against transfer.

### B. Access To Sources Of Proof Weighs Strongly Against Transfer.

#### 1. Defendants Ignore Substantial Sources of Party Proof Outside of the NDCA and CDCA—Including a Large Amount in Texas

Significant sources of proof relevant to the issues in this case are located in this judicial district. All of PersonalWeb's party witnesses are located at its headquarters in Tyler. *See* Weiss Decl. at ¶¶ 2, 7-8. PersonalWeb's documents and electronic data, including PersonalWeb's main servers and development servers, are located in Tyler. *See id.* at ¶ 11.[2] PersonalWeb has six full-time employees located in Tyler and nine part-time employees, including paid college interns, located in Tyler. *See id.* at ¶¶ 2, 7-8. PersonalWeb conducts extensive development and beta testing of its products in Tyler. *See id.* at ¶ 8. Contrary to Defendants' assertion, these sources of proof are highly relevant to whether Defendants meet their burden of proving that a transfer is "clearly" warranted. *See In re Volkswagen AG,* 371 F.3d 201, 2004 U.S. App. LEXIS 9683, 28 A.L.R. Fed. 2d 731 (2004) at 204 (considering all of the parties and witnesses and claims and controversies in the case in the transfer analysis).

Conversely, the Northern District of California and the Central District of California are entirely inconvenient for PersonalWeb and the trial of this matter. PersonalWeb has no relevant documents and litigation materials in California. *See* Weiss Decl. at ¶ 11. In arguing that California would be a convenient forum for PersonalWeb, Defendants point only to the fact that

---

[2] Defendants speculate that the documents relating the "Patents and their ownership, prosecution, and prior assertions also appear to be located in California." (Mot. at 7.) Defendants' speculation is based solely on the location of the prior owner of the patents. But the patents have changed ownership. Not surprisingly, the location of the relevant documents has been transferred to the new owner, PersonalWeb. *See* Weiss Decl. at ¶ 12. Moreover, the documents relating to the patents make up only a fraction of PersonalWeb documents that Defendants will undoubtedly seek in this case. Defendants entirely ignore the documents relating to the development of its products, which utilize the Truenames patents. These documents were created in Tyler and have always been maintained in Tyler. *See id.* at ¶ 11.

PersonalWeb's "founders" and its parent company have ties to California. (Mot. at 4-5, and 7.)[3] This is misguided. The correct inquiry is where the parties' sources of proof are located, not where founders, parents, and prior patent owners are located. *See Data, LLC v. Packeteer, Inc.*, 2009 U.S. Dist. LEXIS 81067, at \*24 (E.D. Tex., Mar. 5, 2009) (Love, J.) ("While Defendants point to the Northern District of California as the location for a significant source of proof, they ignore the remaining sources of proof which originate from numerous locations."). *See also Motorola, Inc. v. Vtech Communications, Inc.*, No. 5:07-CV-171, at \*5-6 (E.D. Tex. August 3, 2009) ("VTech would also have this Court . . . discount VTech's San Antonio facility and any relevant evidence located therein … The Federal Circuit's recent case law, however, suggests that such findings are inappropriate.").

Moreover, Defendants conspicuously ignore their own presence and potential sources of proof in Texas, which PersonalWeb details in § II.C, *supra*. Further, EMC's presence in and near the EDTX is considerable. *See* Exs. A.7-A.10.

Additionally, EMC and VMware maintain servers and operate infringing business activates directly in Tyler. For example, on March 19, 2012, EMC announced that Tyler

---

[3] Defendants focus much of their motion on the fact that the Truenames patents were once owned by Kinetech, a subsidiary of Brilliant Digital Entertainment ("BDE"), both California entities. This is not only legally irrelevant, but Defendants misconstrue the relationships between both PersonalWeb and the Truenames patents and between PersonalWeb and these third-party companies. PersonalWeb was formed, in Tyler, over nine months before it acquired the Truenames patents from Kinetech in July 2011. *See* Weiss Decl.. Further, PersonalWeb began developing products at its Tyler office and hiring students from the University of Texas at Tyler for various projects months before the Truenames patents were acquired. *See* id. PersonalWeb was a functional company before it owned any interest in the Truenames patents. Further, although BDE is headquartered in Studio City, California, only one employee from BDE actually works in California, with the only other officer, and only officer who is likely to have knowledge relevant to this lawsuit, working and residing in Australia. *See* Bermeister Decl.. Neither Kinetech nor Altnet, another subsidiary of BDE identified in Defendants' motion, have any direct employees. *See* id. Both companies are managed by BDE's two officers: one of whom works and resides in Sydney, Australia and the other of whom works and resides in California. *See* id. Anthony Neumann, the employee located in California, likely has no knowledge relevant to this lawsuit. *See* Neumann Decl. Both of these potential witnesses have stated that they are willing to travel to this District if necessary and that doing so would pose no hardship. *See* id.

Independent School District will use an EMC and VMware system for its entire IT infrastructure and data storage needs. *See* Ex. A.6.

Finally, this case will largely focus on an EMC content addressable storage product known as Centera. EMC's Centera product has no ties to California whatsoever. Nor has EMC identified any California witnesses, or any documents located in California, relevant to Centera. EMC purchased Centera though the acquisition a Belgium company called FilePool, N.V. *See* Ex. A.12. FilePool was founded by Paul Carpentier. Mr. Carpentier is now employed by Caringo, a defendant in one of the related cases. *PersonalWeb v. Caringo, Inc.*, No. 6:11-cv-00659 (E.D. Tex.). Caringo is based in Austin, Texas, and has no ties to California. PersonalWeb expects that Mr. Carpentier may be a significant witness in this matter. He is employed by a Texas company that is a defendant in a related case before this Court that has not sought a transfer of venue.

> 2.  *The Defendants Ignore Substantial Sources of Non-Party Proof Outside of the NDCA and CDCA—Including a Large Amount in Texas.*

Defendants argue that a number of relevant third party witnesses reside in California. (Mot. at 8-9.) First, Defendants point to a single alleged prior art witness who resides in Palo Alto, California. (Mot. at 8 n.13.) The location of one inventor on one alleged prior art patent residing in California hardly warrants material consideration. The patents-in-suit cite hundreds of prior art references with hundreds of inventors residing throughout the United States. In fact, a review of the cited references reveals thirty-seven inventors in sixteen patents who reside in Texas. *See* A.13-A.28. Eight of these inventors—Stephen J. Ford, Vappala J. Joseph, Robert W. Peterson, Diana M. Sparacin, Craig W. Thompson (inventors listed in 5,297,279); Richard W. Shaw, and Donald D. Strausburg (inventors listed in 5,357,440); and Marvin T. Talbott (inventor listed in 5,357,440 and 5,359,532)—are identified in these patents as residing in this District.

*See* id.  Thus, it is apparent that the location of sources of proof related to potential prior art and non-party witnesses with potential information on prior art does not favor transfer.

Second, Defendants identify a supposedly "significant witness" named Howard Lasky associated with Digital Island who resides in California.  (Mot. at 8.)   Defendants never say why Mr. Lasky is significant or what he will say.  Rather, Defendants base their assertion on the fact that the prior owner of the patents-in-suit, Kinetech, transferred a 50% interest in the patents to Digital Island.  But as Defendants well know from their own motion to dismiss based on the alleged co-ownership, Digital Island transferred all its interest in the patents to Level 3 Communications, LLC.  Level 3 is based in Broomfield, Colorado, and has a substantial Texas presence including at least nine offices throughout Texas and at least one in this District.  See Exs. A.30 and A.31.  Moreover, the attorney who drafted the agreement between Kinetech and Digital Island, Brian Siritzky, resides in Maryland.  Mr. Siritzky also prosecuted the patents-in-suit before the Patent and Trademark Office, and he is willing to attend trial if necessary in Texas.  *See* Siritzky Decl. at ¶¶ 4-8.

Where, as here, the parties have identified potential non-party witnesses in the current judicial district and the proposed transferee districts, this factor does not favor transfer.  *See Balthaser Online, Inc. v. Kimberly-Clark Corp.*, Civil Action No. 2:09–188–TJW, 2011 WL 1235143, at *3 (E.D. Tex. Mar. 30, 2011) ("Given that both parties have identified potential non-party witnesses in both districts, the Court finds that this factor is neutral.").  Because (even accepting, *in arguendo,* Defendants arguments) this lawsuit has material sources of proof in the Eastern District of Texas as well as in California (as well as in other districts), this factor weighs against transfer of the entire action from the Eastern district of Texas to any district in California.

**C.     The Availability of Compulsory Process Weighs Against Transfer.**

This factor is a push.  PersonalWeb and its employees reside in Texas.  Even the

Defendants have operations in Texas.  Defendants assert that the co-inventors of the patents at issue, David Farber and Ron Lachman, as well as allegedly relevant third-party witnesses Mark Dyne and Kevin Bermeister, would not be subject to the subpoena power of this Court.[4]  But none of these individuals are unwilling witnesses.  PersonalWeb has attached declarations from each of these witnesses identified by Defendants, as well as other relevant third-party witnesses, stating that they are willing to travel to this District to testify and that doing so would pose no inconvenience.  Indeed, officers and employees of Altnet, Kinetech, and BDE (the allegedly relevant third-party companies identified by Defendants) are willing to appear in this District to testify.  Thus, compulsory process is available in the EDTX for at least as many witnesses as would be subject to compulsory process in the NDCA or the CDCA.  *See Data, LLC*, 2009 U.S. Dist. LEXIS 81067, at *32 (finding this factor did not favor transfer to the NDCA and stating "it is clear that neither this District, nor the Northern District of California, has absolute subpoena power over all non-party witnesses.").  This factor also weighs against transfer in suits—like this one—involving witnesses dispersed throughout the nation.

### D. The Cost of Attendance for Willing Witnesses Weighs in Favor of Keeping the Case in this District

As explained above, this case is not regional to the NDCA or the CDCA. This case is a nationwide patent infringement suit that involves witnesses with relevant knowledge located across the country.  In evaluating this factor, courts generally consider distances witnesses must travel to reach respective venues.  *See In re Volkswagen II*, 545 F.3d at 317.  This factor does not support transfer where, as here, transfer would merely enhance the convenience of some

---

[4] Notably, Mr. Lachman, who resides in the Chicago area, would not be subject to compulsory process in the NDCA or the CDCA.  Nor would Mr. Bermeister, who resides in Australia.  Mr. Dyne would be subject to compulsory process in the CDCA, but not in the NDCA.  In any event, Defendants provide no suggestion as to what relevant information Messrs. Bermeister or Dyne might provide at trial.  Thus, Defendants cannot establish their burden of proving that transfer is "clearly warranted" by pointing to these witnesses.

witnesses while inconveniencing others.

### E. The "Practical Problems" Factor Weighs Against Transfer.

The most significant aspect of the "practical problems" factor, *In re Volkswagen II*, 545 F.3d at 315, is the cost associated with the actual trial itself. As a trial proceeds, "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id*. at 317. Both the NDCA and CDCA conduct notably longer trials than the EDTX. Thus, even disregarding the inefficiency inherent in transfer, lengthier proceedings in the NDCA and the CDCA would yield a cost disparity relative to the EDTX that weighs against transfer. Further compounding the cost disparity, food and lodging are significantly less expensive in the EDTX than in the NDCA and CDCA.

### F. The "Administrative Difficulties" Factor Weighs Against Transfer.

Defendants rely on misleading statistics for this factor. The data that Defendants present is the median time intervals from filing to *disposition* of civil cases. *See* Dkt. No. 13-30. Time to disposition is obviously not the same as time to trial. In any event, according to the most recent data, the median time to jury trial in the Eastern District of Texas is 23.7 months, while the median time to trial in the Northern District of California is 34.3 months and the median time to trial in the CDCA is 19.7 months. *See* Ex. A.29 at 66, 68, and 35.

### G. Judicial Economy Favors Keeping the Case in this District

Dutifully following the dictates of the America Invents Act, PersonalWeb has filed six other cases in this District involving the same eight patents at issue in this case. Even considering each of these cases individually, this District is the most convenient venue. In at least two of the related cases – *PersonalWeb v. Caringo, Inc.* (6:11-cv-00659) and *PersonalWeb v. NEC Corp. of Am., Inc.* (6:11-cv-00655) – the defendants are located in Texas and they have not sought to transfer the cases to California.

The fact that at least two of the related cases will remain in this judicial district, even if this case is transferred to California, weighs heavily against transfer. Judicial and party resources will be wasted if Courts in two different jurisdictions, located over 1000 miles apart, must decide the same issues such as claim construction and validity. By keeping all related cases in one jurisdiction, this Court can hold joint proceedings on certain common legal issues that will conserve scarce judicial resources. Moreover, joint proceedings on common legal issues will avoid the possibility of inconsistent jury verdicts. In such situations, the Federal Circuit has recognized that this factor may outweigh all others in denying a motion to transfer. *In re Volkswagen III,* 566 F.3d at 1351 (denying mandamus relief of district court's denial of motion to transfer, which was " based on the rational argument that judicial economy is served by having the same district court try the cases involving the same patents").[5] This paramount concern is applicable here.

Defendants overstate the "extensive litigation history" of the patents at issue here in California. Of the four cases identified by Defendants, only one was filed in the Northern District of California and none of the four even reached a hearing on claim construction. The one case filed in the Northern District of California was transferred to the District of Massachusetts at the outset, before claim construction briefing took place. At least two of the Central District of California cases barely made it past the pleading stage. Although one of those cases, Limewire, did go on for some time, that was because the district court stayed the case after

---

[5] This case differs from Magistrate Judge Craven's recent decision to transfer a case to the Southern District of New York in *Droplets, Inc. v. E-Trade Financial Corp., et al.*, Case No. 2:11-cv-255, Dkt. No. 99 (E.D. Tex. May 5, 2012) (motion for reconsideration denied in Dkt. No. 107 by Judge Schneider). In *Droplets*, the Court granted the motion to transfer despite the existence of co-pending cases in the EDTX. The Court based its decision on the fact that the co-pending cases differed with respect to the allegations pled and the types of defendants. In contrast, PersonalWeb's claims in the related cases all involve the same infringing technology (*i.e.*, cloud-based file management and storage) against defendants in the same business (providers of cloud-based file management and storage systems).

Limewire succeeded in placing one of the patents into reexamination before the Patent Office.[6] In fact, the only district court ever to construe claims and try a case involving one of the patents-in-suit is the District Court in Massachusetts, which occurred many years ago. Thus, the prior litigation provides little if any support for a transfer to California.

## V. CONCLUSION

Defendants' Motion is premised on attorney argument devoid of facts. The strong local interest in EDTX, the presence of witnesses and relevant documents in Texas, and judicial economy of keeping all of PersonalWeb's cases together in one district to assure single judicial rulings and consistent jury verdicts, favor denial of the Motion. Defendants have failed to demonstrate that either the Northern District of California or the Central District of California is "clearly more convenient" for litigation of PersonalWeb's infringement claims. Defendants' motion should be denied.

---

[6] Defendants note that, in the *Limewire* case, the prior owners of the Truenames patent-in-suit (Kinetech and Alnet) successfully opposed a motion to transfer the case from California to New York and that the President of the prior owner, Kevin Bermeister, provided a declaration in support of keeping the case in California. (Mot. at 6.) Neither the opposition to the transfer motion in the prior case nor the Bermeister declaration support transferring venue to California in this case. In the declaration, Mr. Bermeister testified that Altnet and Kinetech were small businesses located in California, that its relevant files, software and business operations are located in Los Angeles, and that litigating the case in New York would impose a substantial hardship. Since the patents have been transferred to a new owner in Texas, the relevant files, software, and business operations are in Texas. In other words, the same reasons that commended keeping the case in Los Angeles when the patents were owned by Altnet and Kinetech now commend keeping this case in the EDTX – the location of the new owner.

DATED:  April 6, 2012

Respectfully submitted,
**McKOOL SMITH, P.C.**

 /s/ *Samuel E. Baxter*
Samuel E. Baxter
(sbaxter@mckoolsmith.com)
Texas Bar No. 01938000
104 East Houston Street, Suite 300
P. O. Box. 0
Marshall, Texas  75670
Telephone:  (903) 923-9000
Facsimile:  (903) 923-9095

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Steve Pollinger
Texas State Bar No. 24011919
spollinger@mckoolsmith.com
McKool Smith, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Roderick G. Dorman (CA SBN 96908)
rdorman@mckoolsmithhennigan.com
Lawrence M. Hadley (CA SBN 157728)
lhadley@mckoolsmithhennigan.com
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234

*Attorneys for Plaintiff*
*PersonalWeb Technologies LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3)(A) on April 6, 2012

*/s/ Samuel F. Baxter*_____
Samuel F. Baxter

McKool 440507v1